IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUFACTURERS ALLIANCE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) Case No.: |
| ALLERTON CHARTER COACH, INC., DENNIS TOEPPEN, and the PEOPLE OF THE STATE OF ILLINOIS *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, | )<br>)<br>) *Jury Trial Demanded*<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Manufacturers Alliance Insurance Company ("MAICO"), by its attorneys, BatesCarey LLP, as and for its Complaint against Defendants, Allerton Charter Coach, Inc. ("Allerton"), Dennis Toeppen ("Toeppen"), and the People of the State of Illinois *el rel.* Lisa Madigan (the "State of Illinois"), for declaratory relief, alleges, upon information and belief, as follows:

**NATURE OF THE ACTION**

1. This is an insurance coverage action. MAICO seeks this Court's determination concerning the respective rights and obligations of the parties under two insurance policies issued by MAICO to Allerton for the policy period of September 1, 2017 to September 1, 2018: (1) a Commercial General Liability Insurance Policy, Policy No. 301705-08-44-58-9 (the "CGL Policy"); and (2) a Commercial Business Auto Policy, Policy No. 151705-08-44-58-9 (the "Business Auto Policy") (collectively, the "Policies").

2. On April 23, 2018, the State of Illinois filed a complaint against the Defendants, captioned *People of the State of Illinois ex rel. Lisa Madigan v. Suburban Express, Inc., et al.*, 1:18-cv-02861, in the United States District Court for the Northern District of Illinois, Eastern Division (the "Underlying Lawsuit"). Attached as **Exhibit A** is a true and correct copy of the complaint filed in the Underlying Lawsuit with exhibits attached.

3. Allerton and Toeppen (collectively, the "Insureds") have sought coverage for the Underlying Lawsuit under both the CGL and the Business Auto Policies, and MAICO has denied coverage under both Policies.

4. MAICO seeks a declaration that it is not obligated to defend or indemnify the Insureds for the claims asserted by the State of Illinois in the Underlying Lawsuit, under the terms of the Polices and well-established Illinois law.

## PARTIES

5. MAICO is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located in Blue Bell, Pennsylvania. MAICO is duly authorized to transact insurance business in the State of Illinois.

6. Allerton is a corporation organized under the laws of the State of Illinois with its principal place of business in Champaign, Illinois. Allerton is the Named Insured under the Policies, and is a defendant in the Underlying Lawsuit.

7. Upon information and belief, Toeppen is a resident of the State of Illinois. Toeppen is Allerton's owner, and is a defendant in the Underlying Lawsuit.

8. The State of Illinois is a governmental entity represented in the Underlying Lawsuit by Lisa Madigan, the Attorney General of the State of Illinois. The State of Illinois is joined as a defendant in this action solely because it has filed the Underlying Lawsuit against the Insureds, for which coverage has been requested under the Policies.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202, as MAICO seeks a declaration of the parties rights and obligations under the Policies issued by MAICO. Jurisdiction is also conferred by 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred within this District.

## FACTUAL BACKGROUND

11. On April 23, 2018, the State of Illinois filed the Underlying Lawsuit in Illinois federal court against bus company Allerton, Suburban Express, Inc. ("Suburban"), and the alleged common owner of both Allerton and Suburban, Toeppen.

12. In the Underlying Lawsuit, the State of Illinois alleges that Allerton and Suburban are in the business of providing bus travel between Midwestern universities and the Chicago suburbs.

13. Allerton operates as a contractor for bus and van service for Suburban.

14. In the Underlying Lawsuit, the State of Illinois further alleges Allerton and the other defendants have engaged in a "relentless campaign of vicious customer mistreatment, including racial and religious discrimination, compromising protected personal information, online harassment, and other unlawful and unfair business practices."

15. The State of Illinois alleges that through this ongoing campaign of harassment, intimidation, and discrimination, Toeppen and his companies have violated the Civil Rights Act, the Consumer Review Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Personal Information Protection Act, and the Illinois Human Rights Act.

16. Specifically, the State of Illinois alleges that the underlying defendants engaged in numerous discriminatory actions and communications, including by intentionally: (1) excluding and/or discriminated against customers on the basis of their race and national origin; (2) engaging in repeated discriminatory advertisements on the basis of national origin and race as part of a discriminatory marketing campaign; and (3) discriminating on the basis of religion and banned customers based on the zip code of their billing address.

17. The State of Illinois further alleges that Toeppen indicated his motivation for mistreating and discriminating against customers based on national origin when he wrote to the University of Illinois on April 5, 2013, noting that "virtually all ticket ripoffs [for bus services] involve . . . Asian students (chinese especially)," "indian students," and students from the very high income suburbs (glencoe, Winnetka, etc)."

18. The State of Illinois alleges other discriminatory conduct by defendants as early as the Fall of 2013, when Suburban put up Korean, Chinese, and Japanese posters around university campuses that said "GO HOME" or its equivalent.

19. The State of Illinois also alleges defendants made disparaging remarks against Chinese people on Suburban's website and in e-mail advertisements sent to Suburban's customer e-mail list in January through December 2017.

20. The State of Illinois further alleges that the defendants engaged in the unfair and retaliatory treatment of their customers.

21. Specifically, the State of Illinois alleges that the defendants: (1) engaged in online retaliation and harassment of customers by name; (2) maintained a webpage attacking individual customers; (3) included customers' identifying information including their names, address, phone number and email address; and (4) engaged in unfair retaliation through customer bans.

22. The State of Illinois also alleges that the defendants used abusive, illegal contract terms and retaliated against customers for contract violations.

23. Specifically, the State of Illinois alleges that the defendants' contracts are non-negotiable, and a prospective customer must agree to the terms before purchasing a ticket; and that online disparagement could lead to being banned from future bus travel, even if the customer purchased a bus ticket.

24. The State of Illinois alleges such conduct by defendants as early as January 2017.

25. Finally, the State of Illinois alleges that Suburban and/or the defendants illegally published customers' personal information.

26. Specifically, in addition to the previously discussed identifying information, Suburban allegedly filed scores of lawsuits against its customers in an inconvenient Illinois forum, which include financial documents containing unredacted private financial information, which Suburban, through Toeppen, posted on Suburban's website.

27. According to the complaint filed in the Underlying Lawsuit, there is "no indication that Toeppen, Suburban or Allerton notified any of the individuals" in the lawsuits that their identifying information and confidential financial information were purposefully posted on the internet by defendants. Other counts are alleged against Suburban and Toeppen in the Underlying Lawsuit that do not involve Allerton.

28. The State of Illinois alleges three causes of action against Allerton, along with the other defendants: (1) race and national origin discrimination in violation of 42 U.S.C. § 1981 (Count I); violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III); and violation of the Illinois Human Rights Act (Count VI).

29. The State of Illinois seeks declaratory and injunctive relief (including restitution) against Allerton and the other defendants in relation to the above-referenced counts. In relation to Count I, the State of Illinois also seeks compensatory damages, punitive damages, and attorney's fees and costs. In relation to Count III, the State of Illinois seeks statutory damages under the Consumer Fraud Act in the amount of: (1) $50,000 per deceptive act or unfair practice, and an additional $50,000 per deceptive act or unfair practice found to have been committed with intent to defraud; and (2) $10,000 for each offense committed against a person 65 years of age or older. In relation to Count VI, the State of Illinois seeks a civil penalty under the Human Rights Act not to exceed $10,000 per defendant for each act of unlawful discrimination.

## THE MAICO POLICIES

<u>The Business Auto Policy</u>

30. MAICO issued the Business Auto Policy, Policy Number 151705-08-44-58-9, to Allerton as the "Named Insured" for the policy period of September 1, 2017 to September 1, 2018. The Business Auto Policy's Covered Auto Liability Coverage section, Section II, has a $5,000,000 limit of liability. A true and correct copy of the Business Auto Policy is attached hereto as **Exhibit B**.

31. The Business Auto Policy provides in relevant part in its Insuring Agreement as follows:

> **SECTION II – COVERED AUTOS LIABILITY COVERAGE**
>
> **A. Coverage**
>
>> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

\*       \*       \*

> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Out duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

32. The Business Auto Policy defines the terms "accident," "bodily injury" and "property damage," as used in the aforesaid Insuring Agreement, as follows:

> **A.**  "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

\*       \*       \*

> **C**.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

\*       \*       \*

> **M.**  "Property damage" means damage to or loss of use of tangible property.

33. The Business Auto Policy excludes non-accidental conduct as follows:

> **1.  Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

34. The Business Auto Policy also contains a "Punitive Damages Exclusion- Illinois" Endorsement, which provides in relevant part:

> This insurance does not apply to punitive or exemplary damages. However, if a "suit" shall have been brought against the insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages,

-7-

then the company will afford a defense to such action without liability, however, for such punitive or exemplary damages.

The CGL Policy

35. MAICO issued the CGL Policy, Policy Number 301705-08-44-58-9, to Allerton as the "Named Insured" for the policy period of September 1, 2017 to September 1, 2018. The CGL Policy has a $1,000,000 limit of liability under Coverage A – Bodily Injury and Property Damage Liability, and under Coverage B – Personal and Advertising Injury. A true and correct copy of the CGL Policy is attached hereto as **Exhibit C**.

36. The CGL Policy provides, in its Insuring Agreement, as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

37. The CGL Policy defines the terms "occurrence," "bodily injury" and "property damage," as used in the aforesaid Insuring Agreement, as follows:

    **3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

        \*    \*    \*

    **13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

        \*    \*    \*

    **17.**    "Property damage" means:

        **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence".

38. Coverage A of the CGL Policy also excludes non-accidental conduct as follows:

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion for not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

39. The CGL Policy also includes "personal and advertising injury" coverage which provides, in relevant part, as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

      **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

40.    The CGL Policy defines "personal and advertising injury" as follows:

    **14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

      **a.**    False arrest, detention or imprisonment;

      **b.**    Malicious prosecution;

      **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

      **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

      **f.**    The use of another's advertising idea in your "advertisement";

      **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

41.    Coverage B of the CGL Policy also excludes non-accidental conduct as follows:

**a.**    **Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done at by or at the direction of the insured with knowledge of its falsity.

42. Coverage B of the CGL Policy also excludes:

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

43. The CGL Policy also contains an "Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability – with Limited Bodily Injury Exception" Endorsement, which provides in relevant part:

A. Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

p. **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

\* \* \*

B. The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

2. **Exclusions**

This insurance does not apply to:

-12-

>    **Access Or Disclosure Of Confidential Or Personal Information**
>
>    "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
>    This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

44. The CGL Policy contains a "Punitive Damages Exclusion- Illinois" Endorsement, which provides in relevant part:

>    This insurance does not apply to punitive or exemplary damages. However, if a "suit" shall have been brought against the insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action without liability, however, for such punitive or exemplary damages.

45. Section II of the CGL Policy, entitled "Who Is An Insured," provides as follows:

**SECTION II - WHO IS AN INSURED**

>    **1.** If you are designated in the Declarations as:
>
>    \*      \*      \*
>
>    **d.** As organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

46. Allerton, which is identified as a corporation, is the only named entity in the CGL Policy's Declarations.

**INSURANCE COVERAGE DISPUTE**

47. Allerton seeks insurance coverage from MAICO under the Policies in connection with the Underlying Lawsuit. Toeppen is Allerton's owner.

48. MAICO disputes that coverage exists for the Underlying Lawsuit under the Policies.

49. An actual, present, and bona fide controversy exists between MAICO on one hand, and Allerton and Toeppen on the other hand, with respect to whether there is insurance coverage for the above-referenced Underlying Lawsuit under the Policies.

50. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policies.

**COUNT I**

**(Declaratory Judgment As To No Coverage Under The Business Auto Policy)**

51. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 50 of this Complaint, as if fully set forth herein.

52. Coverage is barred or limited for the Underlying Lawsuit under the applicable terms, conditions, limitations, and exclusions of the Business Auto Policy, and/or under the laws of the State of Illinois, for the following reasons:

    a. In the Underlying Lawsuit, the State of Illinois does not allege an "accident" as that term is defined in the Business Auto Policy.

    b. In the Underlying Lawsuit, the State of Illinois does not allege a "bodily injury" as that term is defined in the Business Auto Policy.

    c. In the Underlying Lawsuit, the State of Illinois does not allege "property damage" as that term is defined in the Business Auto Policy.

    d.    In the Underlying Lawsuit, the State of Illinois seeks declaratory and injunctive relief, and such relief would not constitute damages because of "bodily injury" or "property damage" under the Business Auto Policy.

    e.    Even assuming "bodily injury" or "property damage" caused by an "accident" were alleged in the Underlying Lawsuit (which MAICO denies), the "Expected Or Intended Injury" exclusion precludes coverage for the allegations at issue in the Underlying Lawsuit under the Business Auto Policy, as the State of Illinois alleges the Insureds "intentionally" and "purposefully" discriminated against certain individuals on the basis of their race and national origin, and published and circulated written communications that the Insureds knew would deny the Insureds' facilities, goods, and services to people of Asian origin.

    f.    Even assuming the Underlying Lawsuit falls within the scope of coverage provided under the Business Auto Policy (which MAICO denies), the "Punitive Damages Exclusion- Illinois" precludes coverage for punitive damages.

## COUNT II

### (Declaratory Judgment As To No Coverage Under The CGL Policy)

53. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 52 of this Complaint, as if fully set forth herein.

54. Coverage is barred or limited for the Underlying Lawsuit under the applicable terms, conditions, limitations, and exclusions of the CGL Policy, and/or under the laws of the State of Illinois, for the following reasons:

    a.    There is no accidental conduct alleged in the Underlying Lawsuit; that is, there is no allegation of an "occurrence"---i.e., an accident----as required by Coverage A to the CGL Policy.

    b.    In the Underlying Lawsuit, the State of Illinois does not allege "bodily injury" as that term is defined in the CGL Policy.

    c.    In the Underlying Lawsuit, the State of Illinois does not allege "property damage" as that term is defined in the CGL Policy.

    d.    Even assuming "bodily injury" or "property damage" caused by an "occurrence" were alleged in the Underlying Lawsuit (which

        MAICO denies), conduct which occurred prior to the policy period at issue is precluded from coverage under the CGL Policy.

e. Even assuming "bodily injury" or "property damage" caused by an "occurrence" were alleged in the Underlying Lawsuit (which MAICO denies), coverage is precluded where an insured authorized by Allerton to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred prior to the inception of the CGL Policy.

f. In the Underlying Lawsuit, the State of Illinois seeks declaratory and injunctive relief, and such relief would not constitute damages because of "bodily injury" or "property damage" under Coverage A of the CGL Policy.

g. Even assuming "bodily injury" or "property damage" caused by an "occurrence" were alleged in the Underlying Lawsuit (which MAICO denies), the "Expected Or Intended Injury" exclusion precludes coverage for the allegations at issue in the Underlying Lawsuit under Coverage A of the CGL Policy, as the Underlying Lawsuit alleges the Insureds "intentionally" and "purposefully" discriminated against certain individuals on the basis of their race and national origin, and published and circulated written communications that the Insureds knew would deny the Insureds' facilities, goods, and services to people of Asian origin.

h. Even assuming "bodily injury" or "property damage" caused by an "occurrence" were alleged in the Underlying Lawsuit (which MAICO denies), the "Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability – with Limited Bodily Injury Exception" Endorsement to Coverage A of the CGL Policy precludes coverage for any alleged disclosure of personal or confidential information, including financial, credit card, or any other type of nonpublic information.

i. None of the allegations at issue in the Underlying Lawsuit fall within the scope of coverage provided by Coverage B to the CGL Policy; that is, the State of Illinois does not seek "damages because of 'personal and advertising injury' to which this insurance applies."

j. To the extent the allegation in Count III of the Underlying Lawsuit that "certain of Defendants' webpages attacking consumers ate defamatory *per se*" can be interpreted as "publication . . . of material that slanders or libels a person" (which MAICO denies), the State of Illinois seeks declaratory and injunctive relief, and such relief does not constitute "damages because of 'personal and

-16-

advertising injury'." Moreover, the civil penalties sought in Count III amount to fines payable to the State of Illinois, and likewise do not constitute "damages because of 'personal and advertising injury'."

k. To the extent the allegation in Count III of the Underlying Lawsuit that "[D]efendants committed acts or practices declared unlawful under Section 2 of the Illinois Consumer Fraud Act . . . by . . . [p]ublishing the personal information of consumers defendants have sued" could be interpreted as "publication . . . of material that violates a person's right to privacy" (which MAICO denies), the "Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability – with Limited Bodily Injury Exception" Endorsement to Coverage B of the CGL Policy precludes coverage for any "personal or advertising injury" arising out of the disclosure of any person's confidential or personal information, including financial, credit card, or any other type of nonpublic information.

l. Even assuming the State of Illinois seeks "damages because of 'personal and advertising injury' to which this insurance applies (which MAICO denies), the "Knowing Violation of Rights of Another" exclusion precludes coverage for the allegations at issue in the Underlying Lawsuit under Coverage B of the CGL Policy.

m. Even assuming the State of Illinois seeks "damages because of 'personal and advertising injury' to which this insurance applies (which MAICO denies), the "Materials Published With Knowledge Of Falsity" exclusion precludes coverage for the allegations at issue in the Underlying Lawsuit under Coverage B of the CGL Policy.

n. Even assuming the State of Illinois seeks "damages because of 'personal and advertising injury' to which this insurance applies (which MAICO denies), the "Materials Published Prior To The Policy Period" exclusion precludes coverage for the allegations at issue in the Underlying Lawsuit under Coverage B of the CGL Policy.

o. Even assuming the State of Illinois falls within the scope of coverage provided under either Coverage A or Coverage B of the CGL Policy (which MAICO denies), the "Punitive Damages Exclusion- Illinois" precludes coverage for punitive damages.

    p.    Even assuming Toeppen qualifies as an insured under the CGL Policy, the Underlying Lawsuit alleges Toeppen engaged in misconduct that may have been undertaken by Toeppen in an uninsured capacity.

    q.    Coverage is not available for the Underlying Lawsuit to the extent prohibited by the known loss and/or "loss in progress" doctrine.

    r.    To the extent the Underlying Lawsuit is ultimately found to include covered and uncovered matters, or covered and uncovered parties, MAICO is entitled to an appropriate allocation.

## COUNT III

**(Declaratory Judgment As To No Coverage Under The Policies -- Illinois Public Policy)**

55. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 54 of this Complaint, as if fully set forth herein.

56. Coverage is not available to either Allerton or Toeppen under the Policies, as coverage under a contract of insurance for the type of intentional misconduct alleged in the Underlying Lawsuit is void as against Illinois public policy, and courts applying Illinois law will not construe a contract of insurance to provide such coverage.

WHEREFORE, Plaintiff, Manufacturer Alliance Insurance Company, prays that this Court enter a judgment in its favor and against Allerton Charter Coach, Inc. and Dennis Toeppen:

1. Declaring that MAICO has no duty to defend or indemnify Allerton or Toeppen under the Policies in connection with the Underlying Lawsuit;

2. For costs of suit incurred herein; and/or

3. For such other and further relief at law or in equity that the Court deems just and proper.

## **JURY DEMAND**

MAICO demands a jury trial.

Dated: June 8, 2018

Respectfully submitted,

/s/ David L., Koury_____
David L. Koury
Adrian T. Rohrer
BATES CAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Firm I.D.: 47554
Email: dkoury@batescarey.com
    arohrer@batescarey.com

*Attorneys for Manufacturers Alliance Insurance Company*

1972866